UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAVID VAN ELZEN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**GLOBAL STRATEGY GROUP, LLC**, a New York limited liability company, and **AMERICAN DIRECTIONS RESEARCH GROUP, INC.**, a Washington D.C. corporation,<br><br>Defendant. | Case No. 1:20-cv-03541-JPO<br><br>**CLASS ACTION**<br><br>**JURY DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT AMERICAN DIRECTION RESEARCH GROUP, INC'S
<u>MOTION TO DISMISS OR STAY</u>**

**I.    INTRODUCTION**

This case challenges Defendant American Direction Research Group, Inc.'s ("Defendant" or "ADRG") serial violations of the Telephone Consumer Protection Act ("TCPA"). Specifically, ADRG bombards consumers' cell phones with unsolicited, autodialed text messages without obtaining prior express written consent. In response to the Complaint, ADRG has moved to dismiss Plaintiff's claims against it or, in the alternative, to stay this matter pending the Supreme Court's ruling in *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020), a case concerning the definition of an automated telephone dialing system ("ATDS"). Defendant's arguments to dismiss fail, and a stay pending resolution of the *Duguid* case is neither supported nor supportable. As explained below, the Court should deny ADRG's motion.

Defendant puts forth two supposed justifications for dismissal: (1) lack of personal jurisdiction, and (2) failure to adequately plead the use of an ATDS. (Mot. to Dismiss or Stay,

Dkt. 13 at 3–6, 10–14.) Defendant's jurisdictional argument is without merit because ADRG is subject to New York's long-arm statute for the transaction of business—Defendant's unlawful actions arose from its contractual relationship with, and indeed were directed by, Defendant Global Strategy Group, LLC ("GSG"), a New York company. Similarly, ADRG's argument based on supposedly insufficient ATDS pleadings misunderstands the content and effect of the FCC's recent order. Under both the June 2020 order and the *Duran* case, Plaintiff has adequately pleaded the use of an ATDS.

Likewise, ADRG's assessment of the *Duguid* matter pending before the Supreme Court is flawed because, regardless of any change that the Supreme Court might make to the definition of an ATDS, the true nature the dialing equipment that was used to send messages to Plaintiff and the class must be proven through discovery. The *Landis* factors for granting a stay do not favor ADRG's request, and Plaintiff would suffer prejudice if discovery were delayed. Accordingly, the Court should deny Defendant's Motion to Stay or Dismiss in its entirety.

## II.     SUMMARY OF THE CLAIMS

Van Elzen alleges that ADRG violated the TCPA by sending unsolicited, autodialed text messages to his cellphone and to the cellphones of many other consumers, none of whom gave prior express written consent to receive such texts. (*See* Compl., dkt. 1 at ¶¶ 7–8, 25, 51.) Plaintiff seeks to certify a class action on behalf of all consumers who received unsolicited, autodialed text messages from Defendant. (*Id.* ¶ 44.) To redress ADRG's unlawful telemarketing conduct, Plaintiff seeks statutory damages for himself and the class, as well as injunctive relief requiring Defendant to cease its unauthorized autodialed text messaging activity. (*Id.* ¶ 10.)

## III.    ARGUMENT

### A.      The Court Should Deny ADRG's Motion To Dismiss On Both Grounds.

ADRG presents two grounds for dismissal. First, Defendant seeks dismissal for a supposed lack of personal jurisdiction, arguing that it cannot be held to account in the Southern District of New York. (Dkt. 13 at 3–6.) This argument fails because, pursuant to New York's long-arm statute, the Court has personal jurisdiction over ADRG due to the fact that its harmful actions arose from a contractual relationship with (and at the direction of) a New York corporation. Defendant's second basis for dismissal, presented as an alternative to its alternative request to stay the case, is that Plaintiff supposedly has not adequately alleged the use of an autodialer. (*Id.* at 10–14.) This point is likewise without merit—Plaintiff has alleged sufficient facts to plausibly suggest the use of an autodialer, and the FCC's June 25, 2020 Order did not change the analysis or pleading requirements. Accordingly, the Court should deny ADRG's motion to dismiss on both counts and permit this matter to proceed.

### 1. The Court has personal jurisdiction over ADRG pursuant to New York's long-arm statute.

Defendant's first argument for dismissal is that the Court supposedly lacks personal jurisdiction over ADRG to hear Plaintiff's claims against it. (Dkt. 13 at 3–6.) As Plaintiff alleged in his complaint, ADRG does business in this district. Defendant has an ongoing contractual relationship with the New York-based co-defendant GSG, and the unlawful activity at the heart of this lawsuit arose from that contract and was directed by GSG from New York. Thus, under New York's long-arm statute, the Court has specific personal jurisdiction over Defendant to hear Plaintiff's claims.

Of course, and as ADRG points out, the Court must have personal jurisdiction over defendants to preside over an action; personal jurisdiction can be either general ("all-purpose" jurisdiction related to domicile) or specific ("case-linked"). *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1779-80 (2017). Specific jurisdiction requires that the

3

action itself must "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* at 1780 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)) (alterations in original). New York's long-arm statute permits specific personal jurisdiction over a non-resident under four circumstances, but the most relevant to this matter is when the non-resident, either in person or through an agent, "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). To satisfy § 302(a)(1), "a party need not be physically present in the state, and a single act may suffice, provided the claim against the defendant arises from that act." *AmTrust Fin. Servs., Inc. v. Lacchini*, 260 F. Supp. 3d 316, 331 (S.D.N.Y. 2017). Courts consider factors such as "whether an out-of-state defendant transacts business in New York, *whether the defendant has an ongoing contractual relationship with a New York corporation*," and the negotiation or execution of any such contract. *Id.*

Here, Defendant GSG is a New York limited liability company that resides in this state, thereby subjecting it to general jurisdiction. (Dkt. 1 at ¶¶ 12, 15.) ADRG, on the other hand, is a Washington, D.C. corporation. (*Id.* ¶ 13.) Plaintiff's claims against ADRG are based instead on specific personal jurisdiction. Plaintiff alleged in his complaint that Defendant "contract[ed] with" GSG in New York, "does business in this district," and that "the wrongful conduct giving rise to this case was directed from this district." (*Id.* ¶¶ 13, 15.) Each of these allegations illustrate ADRG's specific contacts with the forum to establish jurisdiction for the case at hand, and all of them fall under the "transaction of business" prong of New York's long-arm statute. ADRG has an ongoing contractual relationship with GSG, a New York company, and the claim against ADRG arises from performance under that contract.

In arguing otherwise, ADRG focuses on the fact that neither it nor Plaintiff are New York residents. (Dkt. 13 at 5–6.) That analysis is incomplete, however, because Defendant does little

4

to address, let alone acknowledge, the contacts with New York that Van Elzen has alleged. Plaintiff does not ask the Court to subvert individual assessment of ADRG's contacts, nor does he assert jurisdiction based on the fact that some members of the class may be New York residents. Rather, Plaintiff alleges that the Court may exercise personal jurisdiction over ADRG due to its ongoing contractual relationship with co-defendant GSG, which is domiciled in New York. (*See* Dkt. 1 at ¶ 13.) Further, the harms alleged arise from that contractual relationship and are the direct result of performance under the contract as directed by GSG. (*Id.* ¶¶ 15, 18.) These are sufficient to support jurisdiction under the long-arm statute's "transaction of business" prong. N.Y. C.P.L.R. § 302(a)(1); *AmTrust*, 260 F. Supp. 3d at 331.

Put simply, Plaintiff has adequately alleged ADRG's minimum contacts with the forum state to support specific personal jurisdiction in this matter. The unlawful telemarketing conduct at issue arose from the ongoing contractual relationship with, and at the direction of, a New York company. Defendant's request to dismiss the case should be denied.

>   **2.     Plaintiff has adequately alleged the use of an autodialer, and the FCC's June 2020 Order did not change the ATDS requirements.**

ADRG's second basis for dismissal, which it presents as an alternative to the relief sought in moving to stay, is that Plaintiff has supposedly inadequately alleged the use of an ATDS. (Dkt. 13 at 10–14.) Defendant's argument is based largely on its contention that the FCC's June 25, 2020 Order "supersedes" the ATDS interpretation employed in *Duran*. (*Id.* at 11.) A careful review of the FCC Order, however, reveals that it does not conflict with *Duran* or change the definition of an ATDS—rather, it merely declares that a particular type of dialing system would not be considered automated because it requires a high level of human intervention. Here, Plaintiff adequately alleges that Defendant's dialing system is automated, providing specifics as to why the system does not require enough human intervention to be

5

removed from the ATDS category under current, controlling case law. Thus, Plaintiff has sufficiently stated a claim for relief, and the alternative, alternative motion to dismiss is meritless.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint should not be dismissed unless it appears "beyond a doubt" that the plaintiff can prove no set of facts that would entitle them to the relief sought. *Palmer v. A. & L. Seamon, Inc.*, No. 94 CIV. 2968 (JFK), 1995 WL 2131, at *1 (S.D.N.Y. Jan. 3, 1995) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The complaint must be viewed in the light most favorable to the non-moving party, and the burden on the moving party is heavy because "the sanction of dismissal is harsh." *Id.* (quoting *Duncan v. AT & T Communications, Inc.,* 668 F.Supp. 232, 234 (S.D.N.Y.1987)).

The TCPA prohibits the use of an automatic telephone dialing system to make texts or calls to consumer cell phones. 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). At the motion to dismiss stage, "it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used" to send text messages to his phone. *Battaglia v. Quicken Loans, Inc.*, No. 18-CV-1104, 2019 WL 430042, at *2 (W.D.N.Y. Feb. 4, 2019) (quoting *Torres v. National Enterprise Systems, Inc.*, 2012 WL 3245520, at *3 (N.D. Ill. 2012)). Thus, a plaintiff can allege facts about the nature of the calls (robotic voice, lack of human response, generic message, etc.) to allow the Court to plausibly infer that the calls

6

or texts were made using an ATDS. *Battaglia*, 2019 WL 430042, at *2; *Baranski v. NCO Fin. Sys., Inc.*, No. 13 CV 6349 ILG JMA, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014).

Here, Plaintiff has adequately stated a claim for relief under the TCPA. In his Complaint, Plaintiff frequently alleged that an ATDS was used to send the messages. (Dkt. 1 at ¶¶ 8, 25, 28, 32, 51.) Van Elzen supported this claim with a number of factual allegations, beginning with the impersonal contents of the text message he received. (*Id.* ¶ 31.) ADRG is eager to suggest that, because the message began with "DAVID" in all capital letters, it supposedly is not generic. (Dkt. 13 at 13.) However, the name appears to be a programmed insertion into the otherwise impersonal message, which is separately formatted and alludes to the fact that Defendant was "texting voters," not just Plaintiff. (Dkt. 1 at ¶ 31.) Plaintiff pointed to several other factual details that permit an inference that an autodialer was used: ADRG's website that boasts the use of "predictive dialing systems" (*id.* ¶ 20); former employees categorizing their work as "auto dial[ing] telephone surveys" (*id.* ¶ 21); complaints by other consumers reflect similar or identical messages (*id.* ¶¶ 24, 30, 33); and the fact that Plaintiff could not receive a human response because the phone number that sent the message was not in service. (*Id.* ¶ 38.) These allegations are far more than "threadbare recitals" or "parroted language" from the law, as Defendant would have the Court believe. (*See* Dkt. 13 at 10, 13.) Short of identifying the dialing equipment, which would be impossible without discovery, Plaintiff has met his burden by alleging sufficient facts to enable the Court to infer that an autodialer was used. *See Battaglia*, 2019 WL 430042, at *2.

ADRG spends a portion of its argument claiming that the Second Circuit's decision in *Duran* has been "superseded" by an order released by the FCC on June 25, 2020. (Dkt. 13 at 11–12.) According to Defendant, the FCC crafted a new autodialer definition that should be applied, and Plaintiff has supposedly not alleged sufficient facts to meet that definition. (*Id.* at 12.) But

the FCC did no such thing. The declaratory ruling released on June 25, 2020 addressed a particular type of dialing platform—one that supposedly "require[d] a person to actively and affirmatively manually dial each recipient's number and transmit each message one at a time." (June 25, 2020 FCC Order, Dkt. 12–2 at ¶ 5.) The FCC affirmed the TCPA's existing autodialer definition; it did not create a new definition, and it likewise did not determine whether any specific system qualified as an ATDS:

> We do not rule on whether any particular P2P text platform is an autodialer because the record lacks a sufficient factual basis for us to confirm (or for commenters to assess) whether any particular P2P text platform actually works as claimed in the P2P Alliance Petition. We clarify, however, that if a texting platform actually "requires a person *to actively and affirmatively manually dial each recipient's number and transmit each message one at a time*" and lacks the capacity to transmit more than one message without a human manually dialing each recipient's number, as suggested in the P2P Alliance Petition, then such platform *would not be* an "autodialer" that is subject to the TCPA.

(*Id.* at ¶ 11) (emphasis added). The order does not interpret the statute to delineate a new pleading standard—it provides a pointed example of technology that would not be considered an autodialer.

Moreover, the June 25 Order does not conflict with *Duran*, let alone supersede the ruling, on the issue of human intervention. As Plaintiff pointed out in his complaint, *Duran* held that "clicking 'send' or some similar button—much like flipping an 'on' switch—is not the same thing as dialing, since it is not the actual or constructive inputting of numbers to make an individual telephone call or to send an individual text message. Clicking 'send' does not require enough human intervention to turn an automatic dialing system into a non-automatic one." *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 289–290 (2d Cir. 2020). While the Second Circuit pointed to clicking "send" as insufficient human intervention to take a dialer out of the definition of an ATDS, the FCC concluded that "actively and affirmatively manually dial[ing] each

8

recipient's number and transmit[ting] each message one at a time" is decidedly *enough* human intervention such that a platform would not be considered an autodialer. *Compare id.*, *with* (Dkt. 12–2 at ¶ 11.) These decisions do not stand in conflict—rather, they illustrate contrasting levels of human intervention that do and don't qualify as enough to render a dialer non-automatic.

Defendant further makes a demonstrably false assertion that Plaintiff "concedes that the alleged device requires human intervention." (Dkt. 13 at 14.) ADRG's claim is based on Plaintiff's allegation that ADRG's platform "can be utilized in a way where call center personnel click 'send' in order for text messages to be sent." (Dkt. 1 at ¶ 28.) This is hardly a concession, especially considering that Van Elzen further alleged that "such actions do not place the dialing equipment outside the scope of the definition of an ATDS." (*Id.*) These allegations liken the Defendant's equipment to that in *Duran* that *was* considered an ATDS. *See Duran*, 955 F.3d at 289–90. And, despite ADRG's arguments to the contrary, *Duran*'s prevailing standard was not altered or "superseded" by the FCC's June 25, 2020 Order.

In short, Defendant's arguments for dismissal either misinterpret or simply overlook the factual allegations in the Complaint. Plaintiff has sufficiently stated a claim for relief from Defendant's unlawful telemarketing, in light of both *Duran* and the FCC's recent ruling. Van Elzen has met his burden to survive dismissal, and Defendant's motion should be denied.

> **B.     The Alternative Request To Stay Is Inappropriate Because A Ruling In *Duguid* Would Not Be "Dispositive" Of Plaintiff's Claim.**

As an alternative to dismissal, ADRG asks the Court to stay this case pending the Supreme Court's review of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). (Dkt. 13 at 6–10.) The Court's ruling could theoretically change the definition of an ATDS, but it will not affect the foundation of Plaintiff's claim—no matter what is decided, this case will require discovery regarding the dialing technology used by ADRG, and Defendant cannot credibly

demand delay of that discovery. Likewise, when considering the appropriate *Landis* factors, a stay is unsupported—an immoderate, indefinite delay would not support judicial efficiency and instead would prejudice Plaintiff's ability to obtain evidence. ADRG's alternative request to stay should be rejected, and the Court should permit this matter to proceed to discovery.

As explained above, at issue in *Duguid* is the definition of an ATDS. Following dismissal of Duguid's complaint for failing to adequately alleged the use of an ATDS, the Ninth Circuit reversed and held that an ATDS could be found where the dialing technology is capable of storing numbers to be called and dialing such numbers automatically. *Duguid*, 926 F.3d at 1149–51. The Court rejected the notion that an ATDS must use a random or sequential number generator to store numbers. *Id.* The U.S. Supreme Court granted certiorari on July 9, 2020, for review of the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'

(Dkt. 12-1); *see also* Petitioner's Brief in *Facebook, Inc. v. Duguid, et al.*, Case No. 19-511, 2019 WL 5390116, at *ii (S. Ct. Oct. 17, 2019).

The Supreme Court will ultimately consider whether a dialer that does not use a "random or sequential number generator" may be considered an ATDS. While a decision in either direction could certainly impact TCPA litigation and the legal definition of an autodialer, it will not dispose of Plaintiff's claims or the requirement to demonstrate the use of an autodialer. Here, Plaintiff alleged in his complaint that Defendants used an ATDS, including "a random or sequential number generator." (Dkt. 1 at ¶ 25.) Thus, if the Court answers its question affirmatively, Plaintiff will no longer need evidence of a number generator to prove that Defendant used an ATDS. But regardless of the ruling in *Duguid*, Plaintiff must, through

discovery, obtain evidence of the dialer that was actually used to send the text messages to himself and the class members—such evidence is in Defendant's possession, and it will be required no matter what the Supreme Court decides. ADRG is seeking a stay that will only delay necessary and inevitable discovery. Indeed, considering a similar motion to stay, the District of Arizona reasoned that "regardless of the results in *Facebook* [*v. Duguid*]…[the defendant] will be required to engage in discovery." *Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020) (attached hereto as "Exhibit A"). The court denied the motion to stay because "discovery issues are not likely to be mooted and resources are not likely to be spared" by awaiting *Duguid*'s outcome to begin discovery that is necessary regardless. *Id.* The same is true in this case.

ADRG claims that the requested stay is supported by the factors set forth in *Kappel*—"(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." (Dkt. 13 at 8); *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). In truth Defendant's arguments are doubly flawed: ADRG does not apply the correct legal standard, and the appropriate factors do not favor a stay at all.

Though *Kappel* does not cite to *Landis*, its factors are rooted in the Supreme Court's acknowledgement that courts have inherent power to control their own dockets, including the power to stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. The factors supporting a *Landis* stay have been expressed in number ways, but the five-

factor test put forth in *Kappel* is more applicable when a stay is sought pending resolution of parallel proceedings for the same dispute. *See Youngbloods v. BMG Music*, No. 07 CIV 2394 GBD KNF, 2011 WL 43510, at *4 (S.D.N.Y. Jan. 6, 2011). The correct factors to balance, particularly when a party requests a stay pending resolution of a distinct civil matter, are: (1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay.[1] *Id.* As explained below, none of these factors favor the requested stay.

First, judicial economy would not be served by a stay. Judicial economy may be served where a stay would avoid wasting resources or potentially moot claims. *See Youngbloods*, 2011 WL 43510, at *5. As Defendant recognizes, *Duguid* is a case about the definition of an ATDS and, in particular, whether random number generation is required. (Dkt. 13 at 6–7.) No matter what the Supreme Court decides, this case will proceed—Plaintiff needs discovery to prove his allegation that the text messages were sent using an ATDS. A decision either way in *Duguid* will not moot any issues, and Van Elzen will still need to establish the use of an autodialer through evidence in Defendant's possession. Thus, the parties will be required to expend resources on these proceedings irrespective of the decision. As such, judicial economy does not weigh in favor of a stay.

Second, the balance of harms weighs in Plaintiff's favor and against staying the case. ADRG asserts that a stay would cause "little, if any, prejudice" to Plaintiff because he "merely seeks statutory damages" and because the case has not yet progressed into discovery. (Dkt. 13, at 8.) Defendant ignores the injunctive relief sought in the Complaint, which is necessary to prevent ADRG from continuing its practice of sending unsolicited text messages to Plaintiff and the class

---

[1] The Court in *Youngblood* noted "other pertinent factors specific to the circumstances of this case" as an additional factor. 2011 WL 43510, at *4. Plaintiff contends that there are no unusual circumstances in this case that warrant special consideration.

12

members. (Dkt. 1 at 13 (praying for "[a]n injunction requiring Defendants to cease all unsolicited texting activity"); *see also id.* at ¶ 10.) Additionally, and because discovery has not yet begun, an unnecessary stay could threaten the availability of evidence and prejudice Plaintiff's ability to prove his case. *See, e.g.*, *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir.2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale").

In contrast, ADRG has not pointed (and cannot point) to any credible harm that it would suffer if this matter is not stayed. At most, Defendant calls discovery an "unnecessary use" of resources, but this fails. First, "the expenditure of resources does not alone amount to prejudice." *Maersk Line A/S v. Qingdao Apex Shipping Co.*, No. 17CV8170LAKKHP, 2019 WL 7599889, at *1 (S.D.N.Y. Feb. 8, 2019). Second, as explained above, Plaintiff will require discovery on a number of issues, including the autodialer that was used, regardless of what the Supreme Court decides in *Duguid*. (*See* Dkt. 13 at 10.) In short, *Duguid* will not dispose of this case or excuse ADRG from discovery related to Plaintiff's claims. Both parties will inevitably incur the natural costs associated with discovery, and there is simply no justification for forcing this matter to languish on the Court's docket. ADRG has hardly even attempted to meet its burden under *Landis* to make a clear case of hardship in moving forward—the balance of harms undoubtedly favors Plaintiff and denying the requested stay.

Finally, the potential duration of the requested stay weighs against granting Defendant's motion. "An order which is to continue by its term for an immoderate stretch of time is not to be upheld as moderate." *Youngbloods*, 2011 WL 43510, at *8 (quoting *Landis*, 299 U.S. at 257). Because ADRG considered a different set of factors, it fails to provide any indication as to the duration of the stay it seeks. The *Duguid* case is set for Supreme Court's October 2020 term—it

13

won't likely be decided until June 2021. In other words, ADRG is asking the Court to postpone this matter for *ten months* while the parties await a decision that will not resolve or moot any discovery issues. This would not be a moderate stay.

In short, there is simply no support for staying this matter. This is not one of the "rare" instances where a party should stand aside while a critical rule of law is decided in another case. *Landis*, 299 U.S at 255. ADRG asks the Court to postpone discovery and these proceedings for nearly a year on the misguided belief that a change in the definition of an ATDS would somehow be "dispositive" of Van Elzen's claim. The requested stay is inappropriate and unsupported by any set of *Landis* factors. Defendant's alternative request should be denied.

## IV.  CONCLUSION

Defendant's motion should be denied in its entirety. The Court has personal jurisdiction over ADRG pursuant to New York's long-arm statute because of Defendant's contractual relationship with GSG. Further, Plaintiff has alleged sufficient facts to support his claim that Defendant used an ATDS to send text messages. In regards to ADRG's alternative request to stay this matter, the Supreme Court's review of the ATDS definition in *Duguid* will not be dispositive here, and the *Landis* factors do not support Defendant's plea to halt this case entirely for almost a year. Accordingly, the Court should deny the motion, permit the parties to proceed, and award any such relief as it deems necessary and just.

                                            Respectfully submitted,

DATED:  August 26, 2020                            **DAVID VAN ELZEN**, individually and on behalf of all similarly situated individuals

                                                      /s/ Stefan Coleman

                                            Stefan Coleman
                                            law@stefancoleman.com
                                            LAW OFFICES OF STEFAN COLEMAN, P.A.

11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Telephone: (720) 213-0676

*Attorneys for Plaintiff Van Elzen and the putative Class*

*Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that the above papers were filed through the Court's ECF system, which will serve the papers electronically to all counsel of record.

    /s/ Stefan Coleman