UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAVID VAN ELZEN**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**GLOBAL STRATEGY GROUP, LLC**, a New York limited liability company, and **AMERICAN DIRECTIONS RESEARCH GROUP, INC.**, a Washington D.C. corporation,<br><br>Defendant. | Case No. 1:20-cv-03541-JPO<br><br>**CLASS ACTION**<br><br>**JURY DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANT GLOBAL STRATEGY GROUP, LLC'S MOTION TO STAY</u>**

**I.      INTRODUCTION**

Defendant Global Strategy Group, LLC ("Defendant" or "GSG") violated the Telephone Consumer Protection Act ("TCPA") by subjecting consumers to unsolicited, autodialed text messages to their cell phones without prior express written consent. Before discovery could begin, GSG has asked the Court to stay this matter pending the Supreme Court's ruling in *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020), a case concerning the definition of an automated telephone dialing system ("ATDS"). While a decision in *Duguid* may potentially play a limited role in this matter, Defendant's arguments for a stay fail, and the Court should deny GSG's motion.

To hear Defendant tell it, a favorable ruling from the Supreme Court in *Duguid* would "dispose of Plaintiff's claim in its entirety." (Mot. to Stay, dkt. 10, at 2.) Such a doomsday prediction completely overlooks the fact that, regardless of any change that the Supreme Court

1

may make to the definition of an ATDS, the true nature of GSG's dialing equipment must be proven through discovery. Rather than sit idly by for months and months while evidence becomes more distant and difficult to obtain, the parties should proceed with the discovery and proceedings that will be required regardless of the *Duguid* decision. Indeed, the *Landis* factors for granting a stay do not favor GSG's request, and Plaintiff would suffer prejudice if forced to indefinitely delay discovery. The Court should deny Defendant's Motion to Stay accordingly.

## II.     SUMMARY OF THE CLAIMS

Van Elzen alleges that GSG violated the TCPA by sending unsolicited, autodialed text messages to his cellphone and to the cellphones of many other consumers, none of whom gave prior express written consent to receive such texts. (*See* Compl., dkt. 1 at ¶¶ 7–8, 25, 51.) Plaintiff seeks, following appropriate discovery, to certify a class action on behalf of all consumers who received unsolicited, autodialed text messages from Defendant. (*Id.* ¶ 44.) To redress GSG's unlawful telemarketing conduct, Plaintiff seeks statutory damages for himself and the class, as well as injunctive relief requiring Defendant to cease its unauthorized, autodialed text messaging activity. (*Id.* ¶ 10.)

## III.    ARGUMENT

### A.     The Court Should Deny the Requested Stay.

GSG asks the Court to stay this matter pending a ruling from the Supreme Court in *Duguid*. The Supreme Court's ruling could theoretically change the legal definition of an ATDS, but it will not affect the foundation of Plaintiff's claim—no matter what is decided, this case will require discovery regarding the dialing technology used by GSG, and Defendant has no credible basis for demanding delay of that discovery. Likewise, the *Landis* factors do not support the requested stay, which would prejudice Plaintiff's ability to obtain necessary evidence. GSG's

motion to stay should therefore be rejected, and the Court should permit this matter to proceed to discovery.

> **1. The requested stay is inappropriate because, unlike the Supreme Court's *AAPC* decision, a ruling in *Duguid* could not "dispose" of Plaintiff's claim.**

For the past several months, it was standard practice in TCPA litigation for defendants to request stays pending the Supreme Court's decision in *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-631, 140 S. Ct. 2335 (July 6, 2020) ("*AAPC*"). *AAPC* involved a constitutional challenge to an exemption to the TCPA's autodialer ban for debt collection calls made on behalf of the government, and it theoretically could have resulted in striking the entire statute as unconstitutional. The Supreme Court ultimately applied the traditional remedy of severance and struck only the offending exemption as unconstitutional. *Id.* at 2353–54. Nevertheless, and even though the predicted dismantling of the entire statute was highly unlikely, the uncertain fate of the TCPA's autodialer ban convinced a multitude of courts to stay proceedings before them pending the *AAPC* ruling.[1]

Now that *AAPC* has been decided, GSG points to a different TCPA appeal in seeking a stay of these proceedings: *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). Following the district court's dismissal of Duguid's complaint for failing to adequately alleged the use of an ATDS, the Ninth Circuit reversed and held that an ATDS could be found where the technology

---

[1] The practice of seeking stays in TCPA matters has gone back before the *AAPC* decision. Defendants sought stays awaiting the FTC's 2015 TCPA Order—claiming it would settle the issue—and then sought stays when the FTC's 2015 TCPA Order was appealed to the D.C. Circuit (again claiming that the issue would be resolved once and for all). *See, e.g.*, *Knapper v. Cox Commc'ns, Inc.*, No. CV-17-00913-PHX-SPL, 2019 WL 250430 (D. Ariz. Jan. 17, 2019); *Larson v. Harman Mgmt. Corp.*, No. 116CV00219DADSKO, 2018 WL 6459964 (E.D. Cal. Dec. 10, 2018). Yet, after the D.C. Circuit ruled, Defendants even began seeking stays pending a new order from the FTC. *See, e.g.*, *Simon v. Ultimate Fitness Grp., LLC*, No. 19 CIV. 890 (CM), 2019 WL 4382204, at *8 (S.D.N.Y. Aug. 19, 2019).

is capable of storing numbers to be called and dialing such numbers automatically. *Id.* at 1149–51. The Court rejected the notion that an ATDS must use a random or sequential number generator to store numbers. *Id.* The U.S. Supreme Court granted certiorari on July 9, 2020, for review of the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'

Petitioner's Brief in *Facebook, Inc. v. Duguid, et al.*, Case No. 19-511, 2019 WL 5390116, at *ii (S. Ct. Oct. 17, 2019).

The Supreme Court's analysis will ultimately consider whether a dialer that does not use a "random or sequential number generator" may be considered an ATDS. While this could undoubtedly impact TCPA litigation and the definition of an ATDS, it will not dispose of Plaintiff's claims or the requirement to demonstrate the use of an autodialer. Here, Plaintiff alleged in his complaint that Defendant used an ATDS, including "a random or sequential number generator." (Dkt. 1 at ¶ 25.) Thus, if the Court answers its question affirmatively, Plaintiff will not need evidence of a number generator to prove that Defendant used an ATDS. Conversely, if the Court answers its question negatively, such evidence will be required. Of course, regardless of the ruling in *Duguid*, Plaintiff must, through discovery, obtain evidence of the dialer that was actually used to send the text messages to himself and the other members of the class—such evidence is in Defendant's possession, and it will be required in this case no matter what the Supreme Court decides.

Put simply, discovery is still needed to discern what Defendant's dialer could do—there's no evidence of record that the dialer lacked such capacity, and the Court shouldn't simply take Defendant's word for it. Indeed, Defendant's assertion that *Duguid* could "dispose" of Plaintiff's

claim is incomplete and unsupported. The Supreme Court's review is limited to the definition of an ATDS; it may change the level of proof required, but proof will be required nonetheless. GSG is seeking a stay that will only delay necessary and inevitable discovery. For example, in denying a similar motion based on *Duguid*, the District of Arizona reasoned that "regardless of the results in *Facebook* [*v. Duguid*]…[the defendant] will be required to engage in discovery." *Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020) (attached hereto as "Exhibit A"). The court denied the requested stay because "discovery issues are not likely to be mooted and resources are not likely to be spared"—in other words, judicial economy would not be served by staying proceedings that would need to occur regardless of *Duguid*'s outcome. *Id.* The same is true here.

The motion is a bid by Defendant to postpone discovery, but the need for such evidence would still remain after the *Duguid* decision. Whether a random number generator is required or not, the ATDS question may only be solved through discovery related to Defendant's dialing equipment. No issues will be resolved or eliminated by a decision in *Duguid* favorable to GSG. There is simply no justification for delaying the discovery process. Accordingly, the Court should reject GSG's bid for a stay.

        **2.**      **The *Landis* factors do not support granting a stay.**

GSG's assertion that a stay is supposedly favored by the *Landis* factors misses the mark. Plaintiff will be prejudiced by a stay, and GSG will not suffer any hardship by proceeding because the *Duguid* decision will not be dispositive here. Further, judicial economy and the public interest will not be served by delaying inevitable discovery. A stay of this action pursuant to *Landis* is simply unsupported.

In *Landis*, the Supreme Court acknowledged that courts have inherent power to control their own dockets, which includes the power to stay. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). However, any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. Only in "rare circumstances" will a party be compelled to stand aside while a litigant in another case settles the rule of law that will define the rights of both. *Id.*

The factors supporting a *Landis* stay have been expressed in a number of ways, including the five-factor test put forth by GSG, which is more applicable when a stay is sought pending resolution of parallel criminal proceedings. (Dkt. 10 at 5–6); *see Youngbloods v. BMG Music*, No. 07 CIV 2394 GBD KNF, 2011 WL 43510, at *4 (S.D.N.Y. Jan. 6, 2011). The more appropriate factors to balance, particularly when considering stay of one civil action pending resolution of another, are: (1) the promotion of judicial economy; (2) the balance of harm to the parties; and (3) the duration of the requested stay.[2] *Id.*

Defendant relies on the wrong standard, and its analysis of these factors is flawed. As explained below, none of the *Landis* factors support the requested stay, and GSG's motion should be denied.

      **a.**    *Considerations of judicial economy support denying the request for a stay.*

First, and as noted above, judicial economy would not be served by a stay. Judicial economy may be served where a stay would avoid wasting resources or potentially moot claims. *See Youngbloods*, 2011 WL 43510, at *5. Defendant asserts that the same consideration should

---

[2] The Court in *Youngblood* also noted "other pertinent factors specific to the circumstances of this case" as a fourth factor. 2011 WL 43510, at *4. Plaintiff contends that there are no unusual circumstances in this case that warrant special consideration.

be given to *Duguid* as *AAPC*, claiming that "the parties may expend their resources and the Court's resources on [a case] that may ultimately not proceed." (Dkt. 10 at 8.) However, GSG provides no real support for this claim. In fact, the opposite is true. As Defendant recognizes, *Duguid* is a case about the definition of an ATDS and, in particular, whether random number generation is required. (*Id.* at 3). No matter what the Supreme Court decides, this case will proceed—Plaintiff needs discovery to prove his allegation that the text messages were sent using an ATDS.

Unlike the *AAPC* decision, which could have been "outcome-determinative" if the Supreme Court deemed the entire autodialer ban unconstitutional, a decision either way in *Duguid* will not moot any issues, and TCPA plaintiffs like Van Elzen will still need to establish the use of an autodialer. Thus, the parties will be required to expend resources on these proceedings irrespective of the decision. *Duguid* may modify the category of devices that fit into the definition of an ATDS, but it will not obviate the need for evidentiary proof. As such, judicial economy would not be served by a stay.

> **b.** *The balance of harms does not favor a stay: whereas Defendant's only harm from proceeding is having to engage in discovery it would need to produce in any case, Plaintiff faces prejudice from stale and unavailable evidence.*

Next, Defendant's analysis of the balance of harms is flawed. GSG asserts that a stay poses no risk of harm to Plaintiff because he seeks "purely monetary statutory damages." (Dkt. 10, at 6.) This argument ignores the injunctive relief sought in the Complaint, which is necessary to prevent GSG from continuing its practice of sending unsolicited text messages to Plaintiff and the class members. (Dkt. 1 at 13 (praying for "[a]n injunction requiring Defendants to cease all unsolicited texting activity"); *see also id.* at ¶ 10.) Every month that this matter is stayed is another month for the Defendants to continue their unsolicited autodialing campaign and

7

exacerbate the harms at issue. Additionally, Plaintiff's ability to pursue this action would be harmed by a stay. Delay resulting from a stay can harm plaintiffs because it threatens the availability of evidence. *See, e.g.*, *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir.2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). If Plaintiff is unable to issue any necessary subpoenas or engage in discovery for an extended period of time, he may be prejudiced in his ability to support his claims for relief. In addition to evidence regarding the technological capacity of the dialing system used to transmit the text messages in this case, Plaintiff needs evidence regarding Defendant's supposed basis for consent, use of any third-party vendors, and data that exist only on Defendants' (and their potential vendors') servers. Until such persons, entities, and data are identified, Plaintiff has no assurance that necessary evidence will be appropriately persevered here.

In contrast, GSG vaguely suggests that it could suffer a "potentially unnecessary burden" if a stay is not granted. (Dkt. 10, at 9.) With no further elaboration as to the nature or extent of this burden, Plaintiff can only assume that GSG is referring to the necessary costs of litigation and discovery that will ensue. Defendant continues to assert—without any explanation or support—that a decision in *Duguid* "may even be case-dispositive." (Dkt. 10, at 8.) As detailed above, this is demonstrably false. The *Duguid* decision may expand the definition of an ATDS, but it will not dispose of this case or excuse GSG from discovery related to Plaintiff's claims. GSG did not, and indeed cannot, point to any "harm" that it would experience if a stay is not granted. Both parties will incur the natural costs associated with discovery and litigation, regardless of the Supreme Court's decision in *Duguid*, and there is simply no justification for forcing this matter to languish on the Court's docket for the next year.

In short, Plaintiff will likely suffer harm if the case is stayed, and GSG will experience nothing more than the ordinary (and inevitable) costs of litigation if the case is not stayed. The balance of harms does not weigh in favor of granting a stay.

### c. *The duration of the requested stay is unreasonable.*

The third and final factor is the duration of the requested stay. "An order which is to continue by its term for an immoderate stretch of time is not to be upheld as moderate." *Youngbloods*, 2011 WL 43510, at *8 (quoting *Landis*, 299 U.S. at 257). Because GSG applied a different set of factors in its motion, it did not thoroughly address duration—perhaps in part because it is uncertain. According to Defendant, "a ruling in the *Duguid* matter will almost certainly issue in the first half of 2021." (Dkt. 10, at 6.) The implication here, of course, is that GSG is seeking to stay discovery for potentially a year. The *Duguid* case is set for Supreme Court's October 2020 term, which means that it won't likely be decided until June 2021. Assuming this is true, a stay pending the *Duguid* ruling would result in this matter being on the Court's docket for more than a year (since filing on May 6, 2020) before even a single document has been disclosed. This would not be a moderate stay.

Further still, the parties would need to engage in fact finding on the same issues after *Duguid* as they need to discover now—including the nature and attendant capacity of GSG's dialer. It would be senseless to postpone discovery *for ten months* while the Court and parties await a decision that will not obviate the need for such discovery. Even if the Supreme Court modifies the ATDS definition by removing the number generation requirement, Plaintiff will still need to demonstrate the use of an ATDS to succeed on his claim.

There is simply no support for staying this matter. This is not one of the "rare" instances where a party should be made to stand aside while a pertinent rule of law is decided. *Landis*, 299

U.S at 255. GSG is asking that Plaintiff's case be postponed for nearly a year on the misguided belief that a change in the definition of an ATDS would "dispose" of Van Elzen's cause of action. Judicial economy would not be served by postponing this case. Further, given that Plaintiff would likely suffer harm in the form of evidence becoming unavailable if such a stay is granted, and that GSG will not suffer any harm beside the inevitable cost of litigation, the requested stay is inappropriate. Defendant's motion should be denied.

## IV.   CONCLUSION

The Court should deny Defendant's motion to stay. The Supreme Court's review of the ATDS requirements in *Duguid* will not be dispositive here, where Plaintiff must obtain discovery on the dialer used by GSG. Likewise, the *Landis* factors do not favor Defendant's plea to halt this case entirely for almost a year. Accordingly, the Court should deny the motion, permit the parties to proceed, and award any such relief as it deems necessary and just.

Respectfully submitted,

DATED:  August 26, 2020

**DAVID VAN ELZEN**, individually and on behalf of all similarly situated individuals

  /s/ Stefan Coleman

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
WOODROW & PELUSO, LLC

        3900 E. Mexico Ave., Suite 300
        Denver, CO 80210
        Telephone: (720) 213-0676

*Attorneys for Plaintiff Van Elzen and the putative Class*

*\*Pro Hac Vice*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the above papers were filed through the Court's ECF system, which will serve the papers electronically to all counsel of record.

      /s/ Stefan Coleman