# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
**DAVID VAN ELZEN**, individually and on behalf of all others similarly situated,

       *Plaintiff,*

v.

**GLOBAL STRATEGY GROUP, LLC.**, a New York limited liability company,

       *Defendant.*
---------------------------------------------------------------X

Case No. 1:20-cv-03541-JPO

Judge: Hon. J. Paul Oetken

# PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT GLOBAL STRATEGY GROUP, LLC'S MOTION TO DISMISS

i

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I.   INTRODUCTION ........................................................................................................1

II.  FACTS AND PROCEDURAL BACKGROUND .......................................................2

III. ARGUMENT .................................................................................................................3

    A.   Global Strategy Misstates *Facebook*'s Holding As Well As Its Applicability To Rule 12(b)(6) Motions. ................................................................3

    B.   Plaintiff's Complaint Sets Forth Facts Based On Information Available At The Time It Was Filed And Plausibly Alleges The Use Of An ATDS. ..............5

    C.   To The Extent The Court Finds That The Complaint Is Deficient, Plaintiff Should Be Granted Leave To Amend. ................................................................9

IV.  CONCLUSION .............................................................................................................9

# TABLE OF AUTHORITIES

*Atkinson v. Pro Custom Solar LCC*, No. SA-21-CV-178-OLG,

    2021 WL 2669558 (W.D. Tex. June 16, 2021) ............................................................4, 7

*Bank v. Simple Health Plans LLC*, No. 18CV6457MKBST,

    2019 WL 7878570 (E.D.N.Y. Dec. 12, 2019) ................................................................6

*Bell v. Portfolio Recovery Assocs.,* Civil Action No. 5:18-cv-00243-OLG,

    2021 U.S. Dist. LEXIS 75096 (W.D. Tex. April 13, 2021) ............................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................6

*Carl v. First Nat'l Bank of Omaha*, No. 2:19-cv-00504-GZS,

    2021 WL 2444162 (D. Me. June 15, 2021) ...................................................................4

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ................................................. *passim*

*Garner v. Allstate Ins. Co.*, No. 20 C 4693, 2021 WL 3857786 (N.D. Ill. Aug. 30, 2021).........4, 8

*Gestetner v. Equifax Info. Servs. LLC,* No. 18 CIV. 5665 (JFK),

    2019 WL 2343659 (S.D.N.Y. June 3, 2019) ..................................................................9

*Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794 (2d Cir. 1999).........................................9

*Hinds Cty., Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348 (S.D.N.Y. 2010)...........6

*Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-JGZ,

    2021 WL 3270318 (D. Ariz. July 30, 2021) ..................................................................7

*Krady v. Eleven Salon Spa*, No. 16CV5999MKBRML,

    2017 WL 6541443 (E.D.N.Y. July 28, 2017) ................................................................6

*Libby v. Nat'l Republican Senatorial Comm.*, No. 5:21-CV-197-DAE,

    2021 WL 4025798 (W.D. Tex. July 27, 2021) ............................................................6–7

*Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129 (2d Cir. 2013) ............6

*Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR,

    2021 WL 2949565 (E.D. Mo. July 14, 2021) ................................................................4

*Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA-MEH,

    2021 WL 1291182 (D. Colo. Apr. 7, 2021).....................................................................4

*Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA-MEH,

    2021 WL 1697928 (D. Colo. Apr. 29, 2021) ................................................................... 7

*Rivera v. Children's & Women's Physicians of Westchester, LLP*, No. 16CIV714PGGDCF,

    2017 WL 1065490 (S.D.N.Y. Mar. 18, 2017) ................................................................... 9

*Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466 (S.D.N.Y. 2018) .............................. 6

**STATUTES, RULES, SECONDARY SOURCES**

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ................................................. 1, 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

This case challenges Defendant Global Strategy Group, LLC's ("Defendant" or "Global Strategy") serial violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* (Dkt. 1.) Specifically, Global Strategy, through its telemarketer, blasted thousands of unsolicited text messages to consumers' cell phones nationwide. Rather than answer for its actions, Global Strategy seeks an early exit by claiming that Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) ("*Facebook*") dooms Plaintiff's ATDS claim.

Global Strategy's motion is off-base and premature. First, Global Strategy misconstrues *Facebook*'s holding by claiming that to qualify as an autodialer, dialing equipment must *use* a random or sequential number generator. This is incorrect. Recognizing the express language of the TCPA, the Supreme Court in fact held that a dialing system need only possess *the capacity* to place calls using a random or sequential number generator. Faced with this reality, Global Strategy's motion falls apart.

Indeed, Plaintiff David Van Elzen ("Plaintiff" or "Van Elzen") has sufficiently pleaded the use of an autodialer to survive a motion to dismiss. Plaintiff has not, as Global Strategy claims, simply parroted the statutory language. Rather, Plaintiff pleaded specific allegations regarding Defendant's business practices and the content of the text messages (online surveys). Plaintiff further pleaded facts to demonstrate that Defendant sent the same generic text message to thousands of individuals. At this stage, Plaintiff cannot be expected to plead intricate details regarding the true capacity of Defendant's dialing system. Nevertheless, Plaintiff has pleaded specific facts to support his ATDS claims.

Accordingly, the Court should deny Defendant's motion to dismiss in its entirety.

## II.     FACTS AND PROCEDURAL BACKGROUND

Global Strategy is a public affairs, communications, and research partner for companies and campaigns. (Compl. ¶ 16.) As part of its business practices, Global Strategy attempts to reach consumers to encourage them to complete surveys. (*Id.* ¶ 17.) To target a broader audience, Global Strategy hired American Directions Research Group, Inc. ("American Directions")[1] to perform text blasting campaigns on its behalf. (*Id.* ¶ 18.) American Directions operates a large call center and discloses the following on its website:

> ADRG currently maintains numerous interviewing centers, throughout the United States. These facilities house hundreds of interviewing stations, each equipped with the latest in computer assisted-telephone-interviewing (CATI) software, as well as highly efficient, respondent-friendly predictive dialing systems.
>
> Defendant American Directions discloses on their "Survey Capabilities" webpage that: Utilizing multiple facilities and all of our state-of-the-art telephony allows our research group to maximize capacity and efficiency for any project in the United States. Part of the ADRG telephony solutions that support the research group include intelligent, respondent-friendly predictive dialing systems that enhance productivity and sample frame penetration.

(*Id.* ¶ 20.) Employees of American Directions also describe their job duties as sending autodialed surveys. (*Id.* ¶ 21.)

On December 22, 2019, Plaintiff Van Elzen received a text message sent on behalf of Global Strategy. (*Id.* ¶ 31.) The text message was generic in nature and included a link for Plaintiff to complete a survey. (*Id.*) When Plaintiff clicked the link in the text message, he was directed to a website to complete a survey for Defendant's benefit. (*Id.* ¶ 34-36.) At no time did Plaintiff ever provide Global Strategy with consent to send autodialed text messages to him. (*Id.* ¶ 40.)

---

[1] On January 19, 2021, the Court dismissed American Directions from this suit for lack of personal jurisdiction. (Dkt. 30.)

Further, Plaintiff wasn't the only consumer to be harmed by Defendant. Indeed, online consumer complaints regarding the same texts are extensive. (*Id.* ¶¶ 30, 39.) On information and belief, Global Strategy caused the same text message to be sent to thousands of individuals. (*Id.* ¶ 46.) Based on the impersonal nature of the texts as well as the volume of text messages, Plaintiff alleged that the texts were sent using an automatic telephone dialing system. (*Id.* ¶¶ 8, 25, 32, 51.)

## III. ARGUMENT

### A. Global Strategy Misstates *Facebook*'s Holding As Well As Its Applicability To Rule 12(b)(6) Motions.

Global Strategy begins its motion citing to a single sentence in the *Facebook* opinion to claim that the Supreme Court held that for dialing equipment to qualify as an ATDS "the equipment in question *must use* a random or sequential number generator." (Def. Mot., Dkt. 45 at 5 (emphasis added).) As a result, Defendant asserts that a dialing system can never qualify as an ATDS if it calls from "a stored list of phone numbers." (*Id.*) Global Strategy misstates the actual holding of *Facebook*.

The Supreme Court actually held as follows: "We hold that a necessary feature of an autodialer under § 227(a)(1)(A) is the ***capacity*** to use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) (emphasis added). And this is directly in line with the TCPA's plain language, which defines an ATDS as "equipment which has the capacity" to "store or produce telephone number to be called, using a random or sequential number generator". 47 U.S.C. § 227(a)(1), *et seq*.

In further contrast to Defendant's claim, the Supreme Court specifically addressed how a dialing system that places calls from a preproduced list could qualify as an ATDS. That is, in

3

footnote 7, the Supreme Court clarified that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." 141 S. Ct. 1163, 1172 n.7 (2021) (citations omitted). For example, the District of Maine noted that an autodialer "could potentially fall under the TCPA" if it can perform the actions described in footnote 7. *Carl v. First Nat'l Bank of Omaha*, No. 2:19-cv-00504-GZS, 2021 WL 2444162, at *9, n. 10 (D. Me. June 15, 2021). Thus, Defendant's claim that its dialing system placed text messages from a preproduced list does not—as Defendant would have the Court believe—foreclose the possibility that the system can constitute an ATDS.

Rather, the defining feature of an autodialer is the *capacity* to use a random or sequential number generator. Whether a dialing system has the capacity to utilize a random or sequential number generator is an altogether different question from whether it employed that function. For this reason, post-*Facebook* courts routinely find that dismissal at the pleadings stage is improper. *See Miles v. Medicredit, Inc.*, No. 4:20-CV-01186 JAR, 2021 WL 2949565, at *4 (E.D. Mo. July 14, 2021) ("the Court agrees with Plaintiff that the 'newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage.'" (citations omitted)); *Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA-MEH, 2021 WL 1291182, at *7 (D. Colo. Apr. 7, 2021) ("While the Supreme Court's decision elucidates the definition of an ATDS, that holding will prove far more relevant on a future motion for summary judgment than it does now."); *Bell v. Portfolio Recovery Assocs.,* Civil Action No. 5:18-cv-00243-OLG 2021 U.S. Dist. LEXIS 75096 (W.D. Tex. April 13, 2021); *Garner v. Allstate Ins. Co.*, No. 20 C 4693, 2021 WL 3857786, at*4 (N.D. Ill. Aug. 30, 2021); *Atkinson v. Pro Custom Solar LCC*, No. SA-21-CV-178-OLG, 2021 WL 2669558, at *1 (W.D. Tex. June 16, 2021).

As one Court recently held, "the Mojo Dialer 'can import lists of leads with associated phone numbers' and 'can then generate sequential numbers and store these sequential numbers in a database, to indicate the automatic dialing order for leads . . . Additionally, the SAC alleges the system can automatically call through a list of leads in sequential order . . . These allegations are sufficient to state a cause of action under the TCPA even after *Duguid*." *MacDonald v. Brian Gubernick PLLC*, No. CV-20-00138-PHX-SMB, 2021 WL 5203107, at *2 (D. Ariz. Nov. 9, 2021). Indeed, to hold otherwise would effectively eliminate ATDS claims under the TCPA. The *MacDonald* Court got it right: an autodialer must have the capacity to use a random or sequential number generator, but that number generator does not need to be used to produce phone numbers. Holding otherwise reads "store" out of the statute.

Defendant's reliance on one line of *Facebook*, removed from the context of the Supreme Court's holding, does not support erasure of the "capacity"—and the word "store"—requirement from the TCPA's autodialer definition. Plaintiff has alleged that Defendant's dialer has the requisite capacity, in accordance with the statutory definition and the holding in *Facebook*. Though the specific nature of Defendant's dialing equipment remains exclusively in Defendant's possession, Plaintiff has supported his claim with sufficient factual allegations, and as explained below, the Complaint should not be dismissed.

**B.     Plaintiff's Complaint Sets Forth Facts Based On Information Available At The Time It Was Filed And Plausibly Alleges The Use Of An ATDS.**

Next, Defendant claims that Plaintiff doesn't allege sufficient facts to support his claim that the texts were sent using an ATDS. (Def. Mot. at 5–8.) Instead, Defendant claims that "Plaintiff has merely 'parroted' the statutory language" and that "the Complaint is devoid of any facts to support its legal conclusions." (*Id.* at 8.) Defendant's argument ignores the numerous supporting allegations.

5

To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 555. In ruling on a motion to dismiss, the court's task is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Hinds Cty., Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 357 (S.D.N.Y. 2010) (citations omitted). In making the determination, the court must "accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013).

In the context of TCPA claims, "[c]ourts have noted the difficulty of pleading facts regarding the technology used to make a call or send a text message absent discovery." *Bank v. Simple Health Plans LLC*, No. 18CV6457MKBST, 2019 WL 7878570, at *5 (E.D.N.Y. Dec. 12, 2019) (collecting cases). For this reason, "alleged violations of the TCPA ... need not be pled with particularity." *Id.* Instead, "[c]ourts require plaintiffs to allege facts that would allow for a reasonable inference that an ATDS was used; such facts include evidence that text messages were sent from a 'short code' phone number, generic, impersonal content, and the volume or timing of the calls or messages." *Krady v. Eleven Salon Spa*, No. 16CV5999MKBRML, 2017 WL 6541443, at *4 (E.D.N.Y. July 28, 2017) (collecting cases); *see also Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F. Supp. 3d 466, 476 (S.D.N.Y. 2018) (finding "the sending of generic text messages" is "indicative of Defendants' use of an automated calling platform").

Even post-*Facebook*, courts have found that similar allegations are sufficient to state an ATDS claim. *See, e.g., Libby v. Nat'l Republican Senatorial Comm.*, No. 5:21-CV-197-DAE, 2021 WL 4025798, at *3 (W.D. Tex. July 27, 2021) (finding the allegations of an ATDS

sufficient to state a claim where the text messages were "generic and obviously prewritten"); *Montanez v. Future Vision Brain Bank, LLC*, No. 20-CV-02959-CMA-MEH, 2021 WL 1697928, at *8 (D. Colo. Apr. 29, 2021) (finding ATDS allegations involving "generic and commercial text messages" sufficient to state a claim); *Jance v. Homerun Offer LLC*, No. CV-20-00482-TUC-JGZ, 2021 WL 3270318, at *3 (D. Ariz. July 30, 2021) (gathering cases in which circumstantial allegations of "content of messages, context and manner in which they were sent, frequency of messages, etc." were sufficient to survive a motion to dismiss); *Atkinson,* 2021 WL 2669558, at *1 (denying a motion to dismiss an ATDS claim because "[plaintiff] does not allege that Defendant placed targeted, individualized calls or texts").

      Here, Plaintiff has alleged sufficient facts to support a reasonable inference that the text message was placed using an ATDS. Despite Global Strategy's attempt to minimize the pleadings, Plaintiff specifically alleged that the equipment utilized has the capacity to dial numbers using a random or sequential number generator. (Compl. ¶ 25.) In support, he alleged that Defendant's business model involves conducting phone and text message surveys directed to consumers *en masse*. (*Id.* ¶ 6.) Despite not providing Defendant with any prior express consent, Plaintiff was one of the consumers that received a generic text message, which requested that he fill out a survey. (*Id.* ¶¶ 30, 31, 40.) While Defendant eagerly proclaims that the text was "targeted" because it "identifies him by name" (dkt. 45 at 8), the text actually includes his name set off in all capital letters. (*See* Compl. ¶ 31 ("DAVID").) Further, the text message specifically stated that Defendant was "texting voters" and included a link to an online survey. (*Id.* ¶¶ 7, 31, 34-36) Hence, it appears that Plaintiff's name was programmed to be inserted into the mass texting campaign. In further support, the Complaint details voluminous online complaints regarding the same, generic text messages. (*Id.* ¶¶ 24, 30, 39.) Additionally, the text message was

7

sent from a phone number that is not in service, which is another sign that an autodialer was used to place the call. (*Id.* ¶ 25.) Viewed in a light most favorable to Plaintiff, the allegations relating to the generic nature of the texts as well as the sheer volume of texts sent to consumers support a reasonable inference that texts were send using an autodialer.

In further support of his ATDS allegations, Plaintiff alleged facts regarding the telemarketer's internal business practices. Indeed, the telemarketer's own employees described explained that their duties included placing autodialed telephone surveys. (*Id.* ¶ 21.) And the telemarketer's website also discloses that its dialing systems can function as a predictive dialing system. (Compl. ¶ 20.) Critically, even after *Facebook*, predictive dialers can qualify as an ATDS. *See Garner*, 2021 WL 3857786, at *4. As the *Garner* court explained:

> "[p]redictive dialers include a wide variety of devices, some of which do not qualify as an ATDS under the TCPA because they lack the capacity to randomly or sequentially generate numbers to dial." 2019 WL 2161546, at *3. Importantly, however, "the difference between a predictive dialer and an ATDS is not readily apparent to a recipient of an automated call." *Id.* at *4. Rather, "[s]uch a determination requires information about the technical details of the device that the defendant used to make the calls—information that the plaintiff lacks prior to discovery." Id. As result, "a plaintiff need not provide specific, technical details" about the predictive dialer at issue "at the pleading stage."

*Id.*

Ultimately, Plaintiff is staring into a black box when it comes to the dialing system. Put simply, it's not possible for Plaintiff to plead the specifics regarding a dialing system that he has never had an opportunity to inspect. Absent discovery, plaintiffs must rely on circumstantial and indirect allegations to support an ATDS claim above the speculative level, and Plaintiff has done so here. Van Elzen has alleged sufficient facts that, taken as true (as must be done on at the motion to dismiss stage), support the reasonable inference that Defendant utilized an ATDS to send the text messages at issue. As such, the Court should deny Defendant's motion in its entirety and let this case proceed to discovery.

### C. To The Extent The Court Finds That The Complaint Is Deficient, Plaintiff Should Be Granted Leave To Amend.

Global Strategy closes its motion by arguing that dismissal should be with prejudice. However, "[t]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Rivera v. Children's & Women's Physicians of Westchester, LLP*, No. 16CIV714PGGDCF, 2017 WL 1065490, at *11 (S.D.N.Y. Mar. 18, 2017) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999)); *see also Gestetner v. Equifax Info. Servs. LLC,* No. 18 CIV. 5665 (JFK), 2019 WL 2343659, at *1 (S.D.N.Y. June 3, 2019) ("[l]eave to amend should be freely granted when justice so requires." (citing Fed. R. Civ. P. 15(a)(2))). As such, to the extent the Court determines that Plaintiff failed to allege sufficient facts to support its claim that Defendant utilized an ATDS, Plaintiff respectfully requests leave to amend to cure any defects.

### IV. CONCLUSION

*Facebook* adopted a limited interpretation of an ATDS, but it didn't foreclose all ATDS claims, and it did not write "capacity" or "store" out of the statute. As explained above, a dialer with the capacity to use a random or sequential number generator to either store or produce telephone numbers qualifies as an ATDS, and Plaintiff has alleged sufficient facts to support the reasonable inference that the dialer used by Defendant to send the unlawful text messages fits the Act's ATDS definition. As such, the Court should deny Global Strategy's motion to dismiss and award such additional relief as it deems necessary, reasonable, and just.

        **DAVID VAN ELZEN**, individually and on behalf of all others similarly situated,

Date: December 17, 2021         /s/ *Patrick H. Peluso*
        One of Plaintiff's Attorneys

9

Patrick Harry Peluso (admitted *pro hac vice*)
Woodrow & Peluso, LLC
3900 E Mexico Avenue, Suite 300
Denver, CO 80210
Tel: (720)-213-0676
Email: ppeluso@woodrowpeluso.com

Benjamin Charles Fishman
Yankwitt LLP
140 Grand Street, Suite 705
White Plains, NY 10601
Tel: 914-686-1500
Fax: 914-487-5000
Email: BFishman@yankwitt.com

Stefan Louis Coleman
Law Offices of Stefan Coleman, P.A.
11 Broadway, Suite 615
New York, NY 08701
Tel: 877-333-9427
Email: law@stefancoleman.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's ECF system on December 17, 2021.

/s/ Patrick H. Peluso